IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DAVID ROBERT BENTZ, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 3:13-CV-00573-NJR-DGW |
| PARTHASARATHI GHOSH, ROBERT STELFOX, SHANE LAIR, RYAN SADLER, and WARDEN OF MENARD, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 311), which recommends denying the Motion for Preliminary Injunction filed by Plaintiff David Robert Bentz (Doc. 276). The Report and Recommendation was entered on March 5, 2018. Bentz filed a timely objection on March 7, 2018 (Doc. 313).[1] For the following reasons, the Court modifies the Report and Recommendation and grants in part and denies in part Bentz's Motion for Preliminary Injunction.

## BACKGROUND

Bentz, an inmate at Menard Correctional Center, filed this lawsuit on June 17, 2013, alleging medical personnel at Stateville, Pontiac, and Menard correctional centers were deliberately indifferent to his serious dental needs. Specifically, Bentz claims he has sought dental treatment and relief for chronic tooth pain since 2010 (Doc. 1, pp. 5-7).

---

[1] Bentz filed a second objection on March 21, 2018 (Doc. 319), which appears to be a duplicate of his original objection.

According to Bentz's testimony, in December 2009, an intake dentist at Graham Correctional Center told Bentz he needed three teeth "fixed." (Doc. 197-3, p. 7). The dental record accompanying this visit, however, only indicates that he needed a "routine exam." (Doc. 299-1, p. 1). Shortly thereafter, Bentz was transferred to Stateville, where he asserts he asked Defendant Dr. Ghosh for pain medication and a dental referral (Doc. 197-3, p. 7). Dr. Ghosh denied Bentz pain medication, but referred him to a dentist (*Id.*). On November 5, 2010, a dentist took x-rays of Bentz's teeth and indicated he would be scheduled to receive fillings (*Id.*, p. 8). Bentz was not given any medication for his chronic pain (*Id.*). He was scheduled for a referral exam on March 31, 2011, which was later rescheduled to May 6, 2011, then to August 17, 2011 (*Id.*, pp. 11-12). Prior to his August 2011 appointment, however, Bentz was transferred to Pontiac Correctional Center (Doc. 1, p. 6). When Bentz saw the Medical Director at Pontiac in August 2011 for another medical issue, the Medical Director refused to do anything for Bentz's tooth pain or to put him in to see dental (*Id.*, p. 6). Bentz alleges he never saw a dentist while at Pontiac before he was transferred to Menard in November 2011 (*Id.*).

Upon arriving at Menard, Bentz told the intake nurse that he had dental issues but was simply told to put in a request slip for dental (*Id.*, p. 7). Bentz claims he did not see a dentist until May 22, 2013, when he had his biannual exam (*Id.*). He asserts he told the dentist, Defendant Dr. Stelfox, that he had an abscessed tooth causing swelling down to his neck, but Dr. Stelfox informed him he only needed a cleaning and there was nothing wrong with his teeth[2] (*Id.*). Bentz alleged in his complaint that he was told he

---

[2] Bentz admitted in his deposition that no dentist ever diagnosed him with an abscess and that he just thought he had one based on his experience with an abscessed tooth in the past (Doc. 197-3, p. 12).

would have to wait until he was released to get his teeth fixed, but Bentz is serving a life sentence, making him ineligible for release (*Id.*).

In June 2013, Bentz sought medical care to address his chronic pain and because he was having trouble swallowing and eating (*Id.*, p. 8). When Bentz saw a nurse on June 10, 2013, the nurse did nothing for him despite his jaw being swollen and bruised (*Id.*). Bentz claims the denial of access to dental treatment has caused a risk of harm to his health because he is unable to eat normally, causing him to lose weight and suffer "other health issues." At the time Bentz filed his complaint, he sought monetary damages and injunctive relief in the form of immediate treatment of his abscessed tooth and chronic tooth pain, as well as "other dental care" (Doc. 1, p. 28).

On July 26, 2013, District Judge G. Patrick Murphy[3] denied Bentz's motion for preliminary injunction (Doc. 35). Judge Murphy concluded that Bentz's tooth pain, which "comes and goes *on its own*," combined with the fact that his pain and swelling was reduced with over-the-counter pain medication (although supplied by another inmate), supported the conclusion that his condition was not so dire as to warrant the extraordinary remedy of a preliminary injunction. Furthermore, while Bentz was concerned about the possibility of further tooth decay or extractions of his teeth, Judge Murphy found the *possibility* of irreparable harm is insufficient—rather, irreparable harm must be *likely* in the absence of an injunction.

Bentz appealed that decision to the Seventh Circuit Court of Appeals, arguing that he has suffered from painful tooth decay and has needed fillings since October 2010.

---

[3] Judge Murphy retired in December 2013; Bentz's case was reassigned first to Judge J. Phil Gilbert, then to the undersigned District Judge on May 20, 2014 (Doc. 120).

He stated in his brief on appeal that his only request at the hearing on his motion for preliminary injunction was for Motrin to address his chronic pain. Because this request was denied, Bentz argued, he has continued to suffer despite his continued requests for pain medication and dental care. Therefore, he argued, he met the requirements "for a preliminary injunction for pain management and/or pain medication."

The Seventh Circuit Court of Appeals vacated the Court's order denying a preliminary injunction, finding that the Court rested on an incorrect conclusion that the prison staff's refusal to treat Bentz's intermittent tooth pain, which affected his ability to eat and swallow, was not evidence of irreparable harm.[4] *Bentz v. Ghosh*, No. 16-1697, 2017 WL 5564679, at *3 (7th Cir. Nov. 20, 2017). The Seventh Circuit noted that an official's refusal to treat pain that affects a prisoner's daily living may be irreparable harm even though it is episodic and treated without prescription medication. *Id.* Accordingly, the Court of Appeals remanded the case to the undersigned for further proceedings on Bentz's motion for preliminary injunction (*Id.;* Doc. 267). The Court of Appeals also directed the Court to reinstate the Warden of Menard to perfect any injunctive relief awarded.

On January 22, 2018, Magistrate Judge Wilkerson ordered Bentz to file a notice indicating whether he was still at risk of imminent harm resulting from the denial of dental care. In his response to the Court, Bentz stated that he still suffers chronic pain, swelling, and bleeding, and that his condition has severely worsened as he has had no

---

[4] The Court notes Judge Murphy actually concluded that the *possibility* of future tooth decay and extractions does not constitute irreparable harm, while Bentz's intermittent pain was discussed in the context of an adequate remedy at law, two separate requirements for the issuance of a preliminary injunction. *See, e.g.*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (discussing the two distinct requirements).

treatment to date (Doc. 283). Bentz also requested a wrap-around x-ray of all of his teeth to determine how the damaged has progressed since 2013, as well as a court-appointed dental expert to determine the extent of treatment needed (*Id.*).

In response, Defendants argued first that Bentz is not entitled to injunctive relief, as he is unlikely to succeed on the merits of his claim regarding Defendants' deliberate indifference to his serious dental needs. Defendants pointed out that Bentz has been scheduled for a number of dental appointments since 2013. While he received treatment at some appointments, he either refused to pay the copay or did not report to dental for others. More recently, Bentz received an x-ray of his teeth on September 8, 2016, which resulted in a recommendation that tooth No. 19 be extracted because it was decayed (Doc. 299). Bentz refused the extraction. Bentz also was examined by a dentist on May 22, 2017, and voiced no complaints. Thus, Defendants argued, Bentz is unlikely to succeed on his claim that Defendants deliberately disregarded a serious dental issue.

Defendants further argued that Bentz has an adequate remedy at law, as the Court can remedy the harm alleged in a final determination on the merits. Defendants assert that an Order directing them to x-ray Bentz's teeth would essentially substitute the Court's judgment for the medical judgment of Bentz's current treating dentist, who has evaluated Bentz, knows his treatment history, and has established a treatment plan. Moreover, Defendants stated, Bentz will not suffer irreparable harm absent an injunction, as demonstrated by Bentz's refusal to comply with the recommendation of his dentist to extract tooth No. 19. Finally, Defendants argued that the "balance of equities" is in their favor and that granting preliminary relief in this case is not in the public interest.

Magistrate Judge Wilkerson held a hearing on Bentz's motion on March 2, 2018 (Docs. 312, 326). At the hearing, Bentz stated he "believe[s]" he has at least three teeth with cavities, one of which has been filled and one that needs to be extracted (tooth No. 19) (Doc. 326, p. 15). He also "believe[s]" he has other cavities that need to be filled (*Id.*). As for tooth pain, Bentz testified that eight out of ten times he experiences pain while eating, the level of which varies from a 3 to a 10 (*Id.*, pp. 6-8). When his pain is at a level 10, his face and neck swells, he has headaches, and it affects his vision (*Id.*, p. 8). Bentz also testified that while he did receive an x-ray on September 8, 2016, it was only a bitewing x-ray and not a wrap-around x-ray (*Id.*, p. 11). While the x-ray revealed tooth No. 19 needed to be pulled, Bentz refused the extraction because he had been told by another dentist at Menard that he was "not at risk" for losing his tooth; rather, he only needed a filling to replace one that had fallen out (*Id.*, pp. 10-11). That dentist's opinion was only based on a visual examination, however, not an x-ray (*Id.*, p. 13-14). Finally, Bentz testified that he has not sought dental care since May 29, 2017, because he has "given up on asking" (*Id.*, p. 11).

Dr. Steven Newbold, a dentist at Menard, also testified at the hearing. Dr. Newbold testified that he evaluated Bentz on May 8, 2014, May 22, 2014, May 29, 2015, and June 14, 2016 (Doc. 326, pp. 20-21). He also testified that another dentist at Menard examined Bentz on September 8, 2016, and took four bitewing x-rays (two on one side and two on the other) that showed the condition of multiple teeth (*Id.*, pp. 22, 27). The x-rays revealed decay at tooth No. 19, but no other evidence of decay (*Id.*). The dentist planned to remove tooth No. 19 at that same visit, but Bentz refused (*Id.*, p. 23). Bentz was evaluated again on May 22, 2017, but voiced no complaints at that time (*Id.*, p. 24).

Dr. Newbold then testified that, in his professional opinion, Bentz was not in immediate need of a dental x-ray because they had received no dental request from him (*Id.*, p. 24). Dr. Newbold further stated that a dental x-ray would probably show that tooth No. 19 still needed to be extracted (*Id.*, p. 25). Because Bentz refused to have that tooth pulled before, however, Dr. Newbold did not see a need to do an updated x-ray (*Id.*, pp. 25-26).

### CONCLUSIONS OF THE REPORT AND RECOMMENDATION

Because there was no evidence Dr. Newbold had examined Bentz recently, Magistrate Judge Wilkerson did not find Dr. Newbold competent to provide an opinion on Bentz's current need for a wrap-around x-ray. Instead, Magistrate Judge Wilkerson found Bentz's testimony credible. Nevertheless, Magistrate Judge Wilkerson concluded that Bentz is not entitled to a preliminary injunction.

While sympathetic to Bentz's frustration regarding his attempts to receive dental care, Magistrate Judge Wilkerson found that Bentz has not shown he will suffer irreparable harm absent an injunction. Specifically, Magistrate Judge Wilkerson stated that injury resulting from the refusal to obtain a readily available remedy is considered by the courts to be self-inflicted and, therefore, not an irreparable injury. By his own admission, Bentz has not sought dental care in more than nine months and, therefore, has not requested the relief he is seeking from Defendants. And, while Bentz may have given up on the dental care afforded to him at Menard, cynicism is not a legal basis upon which the Court can find a likelihood of irreparable harm. Because Bentz has not requested the relief he is seeking from Defendants, Magistrate Judge Wilkerson recommended that his motion for preliminary injunction should be denied.

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject or modify, in whole or in part, the magistrate judge's recommended decision. *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). In doing so, the Court has the discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To be granted an injunction, a plaintiff has the burden of demonstrating a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether the "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM*

*General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *Id.* Only if the plaintiff will suffer irreparable harm in the interim—that is, before a final judgment—can he obtain a preliminary injunction. *Id.*

Once the plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

The Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Seventh Circuit has described injunctions like the one sought here, requiring an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

In his objection to Magistrate Judge Wilkerson's Report and Recommendation, Bentz argues he has shown irreparable harm because he continues to suffer chronic pain,

bleeding, weight loss, headaches, and vision issues due to swelling in his mouth. Furthermore, in 2013, he asserts he needed only three fillings. But, because his initial motion for injunctive relief was denied, one of those teeth now needs to be extracted.[5] He claims the loss of this tooth is irreparable harm. Bentz also asserts he will be further irreparably harmed when any other teeth needing fillings are also extracted—that is, if no wrap-around x-ray is done in time for a court-appointed dental expert to determine the degree of his dental problems and whether he needs additional fillings.

The Court disagrees with Magistrate Judge Wilkerson that Bentz has failed to show irreparable harm if relief is not granted. Bentz has been seeking pain medication, specifically ibuprofen (Motrin), to relieve his chronic tooth pain since 2010, to no avail. On appeal, Bentz argued that Motrin would be the least instrusive means to relieve his pain. Brief of Appellant at 30, *Bentz v. Ghosh*, No. 16-1697, 2017 WL 5564679 (7th Cir. Nov. 20, 2017). Bentz also emphasized in his appellate brief that he should not have to rely on another inmate's prescription for pain relievers to address his chronic tooth pain (*Id.*). The Seventh Circuit agreed and vacated this Court's order, finding it was error to conclude that the refusal to treat Bentz's intermittent tooth pain, which affected his ability to eat and swallow, was not evidence of irreparable harm.

Bentz now claims he suffers pain reaching up to a level 10 the majority of days. Given that Bentz is still suffering from ongoing, untreated tooth pain *eight years* later, the Court finds that Bentz has met the standard for irreparable harm. Further, Bentz clearly has no adequate remedy at law, as his tooth pain is not something that can be adequately

---

[5] While it is unclear to the Court which teeth need to be filled, the Court has seen references in Bentz's (mostly indecipherable) dental records to teeth Nos. 3, 18, and 19. One tooth has been filled, and No. 19 needs to be extracted. The status of the third tooth is unknown (*See* Doc. 299-1).

addressed by money damages after a determination on the merits.

Bentz also has a reasonable likelihood of success on the merits of his deliberate indifference claims, *i.e.*, a greater than negligible chance of winning. As recognized by the Seventh Circuit, Bentz told Dr. Ghosh that his pain made eating difficult, yet Dr. Ghosh did nothing but refer Bentz for a future dental appointment, thereby disregarding Bentz's need for immediate pain relief. As to Dr. Stelfox, the Seventh Circuit held that a jury could reasonably find that he was deliberately indifferent to Bentz's complaints of serious pain when he pronounced—without any physical examination—that nothing was wrong with Bentz's teeth. Finally, the Seventh Circuit held that a jury could find Defendants Sadler and Lair deliberately indifferent when they understood his tooth pain was serious but did nothing about it.

Because Bentz's threshold requirements are met, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and evaluate the effect of an injunction on the public interest. Here, the harm of serious pain that Bentz will continue to suffer on a daily basis if a preliminary injunction is denied appears to outweigh the costs that Defendants will incur if it is granted. As to the effect on the public interest, Illinois taxpayers, who would be footing the bill for Bentz's pain medication, "have a vested interest in ensuring that the constitutional rights of its citizens are protected." *Foster v. Ghosh*, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013). Thus, the Court finds that permitting Bentz to have pain relievers to address his chronic pain would not harm the public interest.

Despite having met all the factors for an injunction, the Court notes that the issue of "how pain associated with medical treatment should be mitigated is for doctors to

decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Ordering a specific drug for a prison inmate is an exercise of medical judgment and requires proof that prison officials have "refus[ed] to provide [the] inmate with prescribed medication or to follow the advice of a specialist." *Knox v. Shearing*, 637 F. App'x 226, 228–29 (7th Cir. 2016) (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). Bentz has not presented evidence from any medical professional that he should be prescribed Motrin, and the Eighth Amendment does not entitle inmates to demand specific care. *See id.* "[N]or does it authorize courts to decide questions of medical care on the basis of lay opinion." *Id.*

Accordingly, the Court denies Bentz's revived motion for preliminary injunction to the extent he is asking the Court to order the Warden of Menard to provide specific pain medication for his chronic tooth pain. Likewise, because he is not entitled to demand specific care, the Court denies Bentz's demand for a wrap-around x-ray and a court-appointed expert to determine the extent of treatment needed. The Court does, however, order the Warden of Menard to provide Bentz with a dental exam within 30 days of this Order to assess his current need for dental treatment and pain medication. If Bentz does not believe the exam sufficiently addresses his current dental needs, he may file a new motion for preliminary injunction at that time.

Additionally, Rule 65(c) of the Federal Rules of Civil Procedure requires that the grant of a preliminary injunction be conditioned upon the posting of security. FED. R. CIV. P. 65(c). The purpose of requiring the party obtaining an injunction to post security is to compensate the enjoined party, if it prevails on the merits, for the pecuniary harm caused by a preliminary injunction. *Ty, Inc. v. Publ's Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir.

2002). The Seventh Circuit has observed, however, that this requirement rests within the discretion of the district court. *Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972). Furthermore, circumstances such as indigence can excuse the issuance of a preliminary injunction without a bond. *Wayne Chemical, Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977). Because Bentz is proceeding *in forma pauperis*, the Court declines to require him to post security.

## CONCLUSION

For these reasons, the Court **MODIFIES** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 311) and **GRANTS in part and DENIES in part** the Motion for Preliminary Injunction filed by Plaintiff David Robert Bentz (Doc. 276). Per the Seventh Circuit's Order, the Warden of Menard is **REINSTATED** solely to effectuate the injunctive relief ordered herein. Defendant shall provide Bentz with a dental examination within 30 days of this Order to assess his current need for dental treatment and pain medication. Bentz's specific requests for a wrap-around x-ray and court-appointed expert are **DENIED**.

IT IS SO ORDERED.

DATED:   April 26, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**